STATE of Wisconsin, Plaintiff-Respondent,

v.

Christopher S. HOPPE, Defendant-Appellant.†

Court of Appeals

*No. 2007AP905–CR. Submitted on briefs February 14, 2008.*
*—Decided May 28, 2008.*

## 2008 WI App 89

(Also reported in 754 N.W.2d 203.)

† Petition to review granted 10/15/08.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Martha K. Askins*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Eileen W. Pray*, assistant attorney general.

Before Brown, C.J., Anderson, P.J., and Neubauer, J.

¶ 1. NEUBAUER, J. Christopher Hoppe seeks to withdraw his guilty pleas to twelve counts of possession of child pornography. He appeals from the judgment convicting him and from the order denying his postconviction effort to withdraw his pleas. He contends that the plea colloquy fell too far short of required standards and that, due to being medicated and not reading the plea questionnaire/waiver of rights form ("plea questionnaire"), he did not comprehend the rights he was waiving or the penalties he faced.

¶ 2. We conclude that, although the plea colloquy was brief, since Hoppe assured the trial court that he had discussed the plea and its consequences with both

of his attorneys and that he "fully" understood the elements of the charges and everything in the plea questionnaire with all of his rights in mind, Hoppe did not make a prima facie showing that the plea colloquy was defective. Even assuming for argument's sake that it was flawed, Hoppe had an evidentiary hearing. The total record establishes that the State proved by clear and convincing evidence that his plea was knowingly and voluntarily made. We affirm.

## BACKGROUND

¶ 3. The essential facts are not in dispute. A December 2002 criminal complaint charged Hoppe with two counts of first-degree sexual assault of a child and one count of intentional child abuse, contrary to WIS. STAT. §§ 948.02(1) and 948.03(2)(b) (2005–06).[1] In July 2004, the State filed a seventy-count Third Amended Information reiterating the three original charges and adding sixty-six counts of possession of child pornography and one count of bail jumping, contrary to WIS. STAT. §§ 948.12(1m) and 946.49(1)(b).[2]

¶ 4. Hoppe was represented at the plea hearing by Attorneys William Daley and Jeffrey De La Rosa.[3] Pursuant to a plea agreement, Hoppe pled guilty to twelve counts of possession of child pornography; the remaining fifty-seven counts were to be dismissed and

[1] All references to the Wisconsin Statutes are to the 2005–06 version.

[2] Three counts were the initial three charges, sixty-six were possession of child pornography, and one, case no. 2003CF214, was a felony bail-jumping charge.

[3] Hoppe's lead counsel, California attorney William Daley, was admitted pro hac vice. Local counsel Jeffrey De La Rosa was appointed by the public defender's office.

read in and the parties would be free to argue the sentence. The trial court, the Honorable Robert Kennedy presiding, conducted a plea colloquy at which he introduced the plea questionnaire Hoppe had signed. Judge Kennedy addressed Hoppe personally:

> THE COURT: Okay ... Christopher, have you gone over this plea questionnaire and waiver of rights form with your attorneys—and by the way, which one did you go over it with, Mr. De La Rosa or Mr. Daley?
>
> THE DEFENDANT: Both, sir.
>
> THE COURT: Both, excellent. Are you satisfied you understand everything in the questionnaire and waiver of rights and the elements of the charges you're going to be pleading to, a copy of which elements are attached hereto?
>
> . . . .
>
> THE DEFENDANT: I understand it fully, sir.
>
> THE COURT: Fully. In your opinion are you going to be freely, knowingly, and voluntarily entering your pleas pursuant to the agreement with all your rights in mind?
>
> THE DEFENDANT: Yes, sir, I am.
>
> THE COURT: Counsels, Mr. De La Rosa first and then Mr. Daley, are you both so satisfied? Mr. De La Rosa?
>
> MR. DE LA ROSA: Yes, sir.
>
> THE COURT: Mr. Daley?
>
> MR. DALEY: Yes, your honor.

THE COURT: Based on that, I find that it will be a free, knowing and voluntary plea, or set of pleas. I'm now going to turn to . . . Counts 4 through 15, of the third amended information.

. . . .

You have the third amended information in front of you and you can see what I'm referring to as those entries?

THE DEFENDANT: Yes, sir, I see it.

THE COURT: Very well. Then, continuing on, all of those charges are contrary to Section 948.12(1)(a), Wisconsin Statutes.

How do you plead to all of those counts, 4 through 15 . . .?

THE DEFENDANT: I plead guilty, sir.

THE COURT: Counsels, do you . . . both agree, along with your client, that there is a factual basis? Meaning not necessarily that he agrees that . . . the facts are as claimed, but that if a jury accepted these facts, they could, based upon that, find the defendant guilty. Do both attorneys and the defendant agree that there is a factual basis in that light?

MR. DE LA ROSA: Correct.

MR. DALEY: Yes, your honor.

THE COURT: Very well. Based upon that, I find a factual basis. I adjudge the defendant guilty.

Counts 1 through 3 and 16 through 19 . . . are all dismissed and read in for purposes of sentencing.

I'll order a presentence investigation. The parties will be free to argue. We'll set that up at this time.

. . . .

MR. DE LA ROSA: I'm sorry, judge, that was . . . through Count 69, correct?

THE COURT: 16 through 69 are dismissed and read in, plus 1 through 3.

MR. DE LA ROSA: Okay.

. . . .

THE COURT: All right. Now I'm going to cover one thing that I don't think has to be covered, but I'm doing it as an excess of caution.

There is no real plea agreement other than this dismissal, and that's, nothing you can do about it. The parties are free to argue. So this language really doesn't mean a whole lot. But do you understand that the judge is not bound by any plea agreement or recommendations and may impose the maximum penalty; do you understand that?

THE DEFENDANT: Yes, sir, I do.

THE COURT: And you . . . talked that over with your attorneys, as well as the rest?

THE DEFENDANT: Yes, I have.

. . . .

THE COURT: All right. Then I am . . . all set to proceed to set a sentencing date.

¶ 5. Hoppe was sentenced to twelve years' initial confinement, eighteen years' extended supervision and seventeen years' probation, to be served consecutively. He then moved for postconviction relief, asking to withdraw his guilty pleas. He contended the court did

not comply with WIS. STAT. § 971.08[4] and other court-mandated procedures because the trial court accepted his guilty plea without determining whether any promises had been made to him, informing him of the maximum penalty he faced, or ascertaining that he understood the information in the plea questionnaire and the rights he was waiving. Hoppe also asserted that his pleas were otherwise not knowing and voluntary because he was on painkillers and muscle relaxers for a medical condition and he did not read the questionnaire himself.

¶ 6. The trial court granted an evidentiary hearing without first determining whether Hoppe had made a prima facie case showing defects in the plea colloquy. Due to a judicial rotation, Judge John Race conducted the two-day hearing. After hearing argument and examining the plea questionnaire, Judge Race determined that Hoppe did not make a prima facie showing. Both Attorney De La Rosa and Hoppe then testified. De La Rosa testified he spent approximately twenty minutes reviewing the plea questionnaire with Hoppe, discussed Hoppe's maximum exposure, that the court could consider read-in charges, and that he believed Hoppe understood. Hoppe testified that he realized he did not understand what he was pleading to because the court did not explain anything to him, he does not recall his

---

[4] WISCONSIN STAT. § 971.08, governing plea withdrawal, provides in relevant part:

> (1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:
>
> (a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.
>
> (b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

attorneys explaining things to him, the medications he took interfered with his understanding, and, without his reading glasses, he could not read the plea questionnaire. Finding Hoppe's testimony "self-serving" and "simply . . . not credible," the court ultimately denied the motion. Hoppe appeals.

## DISCUSSION

¶ 7. Plea withdrawal is a matter of right for a defendant who shows that the plea was not knowingly or voluntarily entered. *State v. Van Camp*, 213 Wis. 2d 131, 139, 569 N.W.2d 577 (1997). The question presented on review is one of constitutional fact. *Id.* at 140. We uphold the trial court's findings of fact unless they are clearly erroneous, and review constitutional questions independently. *Id.* We measure Hoppe's understanding at the time he entered his plea. *See id.* at 149.

¶ 8. Hoppe's claim is two-fold. He contends the plea colloquy was inadequate and that factors extrinsic to the colloquy—that he was under the influence of pain medication and did not read the plea questionnaire—rendered his plea infirm. Plea withdrawal motions based on a defective colloquy claim follow *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), and its progeny. Plea withdrawal motions based on extrinsic factors follow cases under *Nelson v. State*, 54 Wis. 2d 489, 195 N.W.2d 629 (1972), and *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996). Hoppe's two claims were properly brought as a single postconviction motion. *See State v. Howell*, 2007 WI 75, ¶ 74, 301 Wis. 2d 350, 734 N.W.2d 48. We address each in turn.

*Adequacy of plea colloquy under Bangert line of cases*

¶ 9. Hoppe first argues that the plea colloquy was deficient because the trial court failed to determine that Hoppe understood the constitutional rights he was waiving, the potential penalties he faced, his pleas' consequences,[5] and whether Hoppe had been threatened or promised anything to induce his pleas. *See State v. Brown*, 2006 WI 100, ¶ 35, 293 Wis. 2d 594, 716 N.W.2d 906. He contends he did not know the effects of the dismissed and read-in charges and the trial court did not discover that he was induced to plead because his counsel made him a "near-promise" he would receive no more than a two-year sentence. Hoppe therefore asks us to conclude that he met his burden under *Bangert* of a prima facie case for plea withdrawal.

¶ 10. For a plea to satisfy the constitutional standard, a defendant must enter it knowingly, voluntarily and intelligently. *State v. Bangert*, 131 Wis. 2d 246, 257, 389 N.W.2d 12 (1986). This means a defendant who pleads guilty must understand both the constitutional rights being relinquished as well as the nature of the crimes to which he or she is pleading. *State v. Brandt*, 226 Wis. 2d 610, 618, 594 N.W.2d 759 (1999).

---

[5] Hoppe directs us to *State v. Lackershire*, 2007 WI 74, 301 Wis. 2d 418, 734 N.W.2d 23, in support of his claim that the trial court failed to notify him of his pleas' direct consequences. There, the supreme court declined to adopt the court of appeals' characterization of read-ins as "collateral consequences." *Id.*, ¶ 28 n.8. The court also expressly declined to address a trial court's obligation to explain the nature of read-in offenses, however, because the dismissed charges were not treated as read-ins, so the issue was not before it. *Id.*

¶ 11. Wisconsin Stat. § 971.08 procedurally implements this constitutional mandate. Under the *Bangert* line of cases, a trial court must address defendants personally and satisfy the duties set out in § 971.08 and by judicial mandate. *See Brown*, 293 Wis. 2d 594, ¶¶ 34–35. The *Bangert* court suggested a nonexhaustive list of various methods the trial court might use to satisfy the statute. *See Bangert*, 131 Wis. 2d at 268. The court need not engage in an extensive verbal colloquy with every defendant, however. *See State v. Moederndorfer*, 141 Wis. 2d 823, 826–27, 416 N.W.2d 627 (Ct. App. 1987). Rather, it has the discretion to tailor the colloquy to its style and to the facts of the particular case provided that it demonstrates on the record that the defendant knowingly, voluntarily and intelligently entered the plea. *Brandt*, 226 Wis. 2d at 620.

■

¶ 12. A defendant alleging that the trial court failed to fulfill its plea colloquy duties is entitled to an evidentiary hearing if he or she makes a prima facie showing that the court accepted the plea in violation of WIS. STAT. § 971.08 or other mandatory procedures, and alleges that he or she did not know or understand the information that should have been produced at the plea colloquy. *Bangert*, 131 Wis. 2d at 274; *Howell*, 301 Wis. 2d 350, ¶ 27. The burden then shifts to the State to show by clear and convincing evidence that the plea was knowingly and voluntarily entered. *Bangert*, 131 Wis. 2d at 274. Whether a party has met its burden of proof is a question of law. *Moederndorfer*, 141 Wis. 2d at 831.

¶ 13. Hoppe concedes that the record here, in the form of the plea questionnaire, shows that he was

informed of the maximum penalties he faced. He argues, however, that a plea questionnaire is not a substitute for the in-person colloquy between the court and a defendant and cannot be used to defeat his prima facie case. Hoppe relies on *Howell*, where our supreme court held that if the plea colloquy is defective, the defendant's right to an evidentiary hearing under *Bangert* cannot be circumvented by the court's or the State's assertion that the record as a whole supports a conclusion of a constitutionally sound plea. *See Howell*, 301 Wis. 2d 350, ¶ 7.

¶ 14. The issue in *Howell* was whether the trial court erred in failing to hold an evidentiary hearing on Howell's motion to withdraw his guilty plea, and under which line of cases—*Bangert, Nelson/Bentley*, or both—the court should have examined the request. *Howell*, 301 Wis. 2d 350, ¶ 2. The tracks have different pleading requirements and burdens of proof. *See id.*, ¶¶ 27–29, 73, 75. We conclude this is not a *Howell* case because Hoppe already was granted a hearing and neither side disputes that his plea withdrawal motion encompasses both lines of cases. A more significant distinction is that, in *Howell*, the State used material extraneous to the plea hearing (the complaint) to show the defendant's understanding of the nature of the crime with which he was charged. *See id.*, ¶ 18. Here, the issue is whether, when the court incorporates the plea questionnaire into the colloquy, the contents of the plea questionnaire become an intrinsic part of that colloquy. We hold that it does.

¶ 15. We do agree that a plea questionnaire is not meant to eliminate the need for the court to make a record demonstrating the defendant's understanding

779

that the plea results in a waiver of the rights detailed in the form. *See State v. Hansen*, 168 Wis. 2d 749, 755–56, 485 N.W.2d 74 (Ct. App. 1992). *Moederndorfer* underscored that, pursuant to *Bangert*, the trial court need not personally go over with the defendant the waiver of each of his or her constitutional rights:

> Personal colloquy by verbally following the provisions of [Wis JI—Criminal] SM-32 is not mandatory. The trial court may instead refer to some portion of the record or some communication between defense counsel and defendant . . . so long as the alternative used exhibits defendant's knowledge of the constitutional rights waived.

*Moederndorfer*, 141 Wis. 2d at 827. We endorsed using a plea questionnaire and noted that its use offered certain advantages in imparting critical information to a defendant:

> People can learn as much from reading as listening, and often more. In fact, a defendant's ability to understand the rights being waived may be greater when he or she is given a written form to read in an unhurried atmosphere, as opposed to reliance upon oral colloquy in a supercharged courtroom setting.

*Id.* at 828. Thus, *Moederndorfer* teaches that the questionnaire becomes part of the colloquy, at least potentially satisfying the court's Wis. Stat. § 971.08 obligations. *Moederndorfer*, 141 Wis. 2d at 827–28.

¶ 16. That is precisely what occurred here. The plea questionnaire and waiver of rights form used here recited each constitutional right subject to being waived, and required that the box before each right be checked to signify an understanding that a plea would result in that right being relinquished. When completed, the form recited that Hoppe understood that by

entering a guilty plea, he gave up of his own free will his constitutional rights to a trial, to remain silent, to testify and present evidence, to subpoena witnesses on his behalf, to a unanimous verdict of twelve jurors, to confront his accusers and to be proved guilty beyond a reasonable doubt. Hoppe signed the plea questionnaire, indicating that he "reviewed and underst[oo]d the entire document and any attachments[,] . . . reviewed it with [his] attorney[s] . . . [and] answered all questions truthfully."

¶ 17. The form became State's Exhibit Number 1 and was made part of the record. Judge Kennedy addressed Hoppe personally, as Wis. Stat. § 971.08 directs, and specifically invoked the plea questionnaire Hoppe had completed. The court ascertained that Hoppe had gone over the questionnaire with both attorneys; that he understood "everything in the questionnaire and waiver of rights and the elements of the charges you're going to be pleading to," and that a copy of the elements was attached; that Hoppe was satisfied he made a free, voluntary and intelligent plea with all of his rights in mind; that both attorneys were satisfied that Hoppe's plea was free, knowing and voluntary; and that there was a factual basis for the plea. This colloquy, which establishes that Hoppe voluntarily and knowingly waived his constitutional rights, exceeds that in *Hansen*, where we deemed inadequate a plea colloquy limited to little more than asking the defendant if he had "gone over" the plea questionnaire with his attorney. *See Hansen*, 168 Wis. 2d at 755.

¶ 18. A plea questionnaire's proper use can lessen the extent and degree of the colloquy otherwise required. *See Hansen*, 168 Wis. 2d at 755–56. As *Moederndorfer* suggests, a written form both gives a defen-

dant the opportunity to receive and digest critical information outside the courtroom's possibly intimidating atmosphere, and aids the court in assessing the defendant's understanding. *See Moederndorfer*, 141 Wis. 2d at 827–28. We do not interpret *Howell* or *Brown* as reading into *Bangert, Moederndorfer* or WIS. STAT. § 971.08 a requirement that, plea questionnaire in hand, the court must revisit the particulars of each item with a defendant, such as Hoppe, who has expressed his full understanding and gives the court no reason to believe that such is not the case. We thus say here what *Moederndorfer* only implies: a plea questionnaire is not outside the plea hearing; it is part and parcel of it.

¶ 19. As such, we also reject Hoppe's claim that the plea colloquy was deficient because the court failed to ascertain that he understood the potential penalties he faced, namely, that he did not realize he faced consecutive sentences or understand that dismissed counts could be read in. Hoppe contends that he entered a plea because he received a "near-promise" of no more than two years, and lays blame at the feet of the trial court for not expressly asking whether any threats or promises induced his plea.

¶ 20. Hoppe originally faced sixty-nine related charges. In exchange for his guilty plea, the State dismissed all but twelve. The "Voluntary Plea" section of the plea questionnaire states:

> I have decided to enter this plea of my own free will. I have not been threatened or forced to enter this plea. No promises have been made to me other than those contained in the plea agreement. The plea agreement will be stated in court or is as follows:
>
> [This next in De La Rosa's writing] Client will enter pleas to 12 counts of poss. of child porn.; state to

dismiss and read in all remaining counts and 03CF214. PSI to be requested and the parties are free to argue sentence.

¶ 21. Hoppe acknowledged in the plea questionnaire that the "maximum penalty I face upon conviction is: each count consecutive: 5 years prison and a $10,000.00 fine (60 y 120,000 total)." Not only does it state "each count consecutive" and "60 y 120,000 total," but the numbers in the parentheses could total the maximum only if each of the twelve counts were imposed consecutively: 12 counts x 5 years each = 60 years, and 12 counts x $10,000 each = $120,000. The plea questionnaire states that Hoppe understood that the judge was not bound by the plea agreement or recommendations and could impose the maximum penalty. During the colloquy, the court called Hoppe's attention to the information, which Hoppe had in front of him, which set forth the maximum penalties. The court advised Hoppe twice that the parties would be free to argue sentence, and verified that Hoppe had understood that the sentencing judge "is not bound by any plea agreement or recommendations and may impose the maximum penalty."

¶ 22. The form also explained the effects of read-ins: the judge may consider read-in charges when imposing sentencing. During the plea colloquy the court stated that identified counts were being dismissed and read in for purposes of sentencing. As noted above, the plea questionnaire stated that Hoppe had not been threatened or forced to enter the plea, and no promises had been made.

¶ 23. Hoppe signed the questionnaire indicating that he understood the plea and its significant effects. He told Judge Kennedy he "fully" understood the form

and the rights he was waiving, and that his guilty pleas were made knowingly and intelligently with all of his rights in mind. Hoppe's ability to comprehend was further demonstrated by his age and educational background—forty-five years old with fifteen and one-half years of schooling—and he stated on the form that he had not had any medications or drugs within the last twenty-four hours. Having concluded that the plea questionnaire was made a part of the plea hearing record, we agree with Judge Race that Hoppe did not make the necessary showing.

¶ 24. But were we to accept for argument's sake that Hoppe made a prima facie case of a defective plea colloquy—and we do not think that he did—the remedy is not plea withdrawal, but an evidentiary hearing. As noted, Hoppe already has had one. At the hearing, the burden simply shifts to the State to prove by clear and convincing evidence that the defendant entered a knowing, voluntary and intelligent plea despite the inadequacy of the record when the court accepted it. *Bangert*, 131 Wis. 2d at 274. The State may use any evidence to do so. *Id.* at 274–75. We conclude the State has made a sufficient showing.

¶ 25. The record amply supports that Hoppe's plea was knowing, voluntary and intelligent. He is well-educated and held responsible military and civilian positions. Both Daley and De La Rosa stated at the plea hearing that they were satisfied that Hoppe's plea was knowing, voluntary and intelligent. De La Rosa testified that he felt confident that Hoppe was fully advised of and understood his rights because he reviewed the form with Hoppe for approximately twenty minutes

and explained each constitutional right in understandable language, per his usual practice.

¶ 26. We are not moved by Hoppe's contention that, despite his written and verbal assertions that he understood the magnitude of his possible sentence, he really did not because of his attorneys' "near promise" of two years' confinement at the most. In addition to the plea hearing record, De La Rosa testified at the postconviction hearing that he explained to Hoppe that he faced potential prison exposure of sixty years, that the court could consider read-in charges and that he believed that Hoppe understood.

¶ 27. Regardless, therefore, of whether we had concluded that Hoppe had made a prima facie showing, it simply would have merited him an evidentiary hearing at which the State would have been put to its proof. He got that hearing. Clear and convincing evidence was adduced that Hoppe's plea was knowing, voluntary and intelligent. That is all that is required.

### Plea infirmity under Nelson/Bentley line of cases

¶ 28. Hoppe also contends that factors extrinsic to the plea colloquy warrant plea withdrawal, thus invoking the *Nelson/Bentley* line of cases. *See Howell*, 301 Wis. 2d 350, ¶ 74. He argues that his pleas were fatally flawed because, due to medication he was taking and his failure to read the plea questionnaire, he did not understand the plea hearing proceedings.

¶ 29. A defendant raising a *Nelson/Bentley* challenge faces stricter pleading requirements than on a *Bangert* claim. *Howell*, 301 Wis. 2d 350, ¶ 75. Moreover, the burden remains with the defendant to prove by clear and convincing evidence that he or she did not

know or understand the information necessary to make the plea knowing and voluntary, resulting in a manifest injustice. *See Brown*, 293 Wis. 2d 594, ¶ 42.

¶ 30. Hoppe testified at the postconviction hearing about the circumstances surrounding his signing of the plea questionnaire and waiver of rights. He testified that, due to taking painkillers and muscle relaxers for a double hernia, he was unable to drive from Chicago to Elkhorn, although he drove to Attorney Daley's hotel that morning. Hoppe testified that because he was "pretty much incapacitated," he and Daley did not discuss the case on the way to court. He also testified he did not tell Attorney De La Rosa that day that he was on medications, and did not tell either attorney that he did not understand what they were telling him because he was "pretty lethargic." De La Rosa testified that he believed he asked Hoppe whether he had taken medication in the past twenty-four hours and recalled reviewing with him the section on constitutional rights. The plea questionnaire states that Hoppe had not "had any alcohol, medications, or drugs within the last 24 hours." Based on their multiple substantive contacts, De La Rosa did not believe Hoppe was under the influence of any medication at the plea hearing that would have caused him "not to understand everything." Hoppe conceded that he never contacted either De La Rosa or Daley between the plea and sentencing to say that the medication had rendered him unable to understand the plea.

¶ 31. In addition to the medication claim, Hoppe also testified that he did not read the questionnaire because he forgot his reading glasses in the car. However, De La Rosa read the plea questionnaire to him. Hoppe acknowledged on cross-examination that he had written in some of the answers himself. Hoppe asserted

that he had a "preconceived idea" that only a majority of jurors had to agree and that he understood "consecutive" to refer to consecutive counts, not additive penalties, so that he thought he faced a maximum of two years' incarceration regardless of the number of counts against him.

¶ 32. With respect to the unanimous jury, defense counsel specifically remembered reading that provision on the plea questionnaire, explaining it, and thus, testified that he believed that Hoppe understood that twelve jurors had to agree on the verdict.

¶ 33. As noted, Hoppe is an educated man of demonstrated capabilities. Yet, Hoppe claims he did not understand what "consecutive" meant in reference to his sentence, or that he did not realize the multiple charges exposed him to multiple punishments. Those claims ring false. *See Brown*, 293 Wis. 2d 594, ¶ 78 (a defendant confronted with multiple charges reasonably should realize he or she faces multiple punishments, which explains plea bargain to reduce number of charges). Furthermore, he originally faced sixty-nine related charges. Hoppe indicated on the plea questionnaire that he understood the fifty-seven dismissed charges could be read in for sentencing, and the form stated that the judge may consider read-in charges when imposing sentence. Even if his attorneys had intimated to him that they anticipated a mild sentence, both the plea questionnaire and the court expressly told Hoppe the court was not bound by any agreement or recommendations and could give him the maximum sentence.

¶ 34. The court found Hoppe to be "intelligent . . . eloquent and manipulative," and that his "self-serving

testimony [did not] even come close to demonstrating a lack of understanding." The trial court makes the credibility determinations when a defendant seeks to withdraw a guilty plea. *See State v. Kivioja*, 225 Wis. 2d 271, 291–92, 592 N.W.2d 220 (1999). Any conflicts or contradictions in the testimony are exclusively for the trial court, not this court. *See State v. Owens*, 148 Wis. 2d 922, 930, 436 N.W.2d 869 (1989). We agree that Hoppe has not shown by clear and convincing evidence that he did not know or understand the information necessary to make his plea knowing and voluntary, such that it resulted in a manifest injustice. *See Brown*, 293 Wis. 2d 594, ¶ 42.

## CONCLUSION

¶ 35. Plea colloquies demand the trial court's "utmost solicitude." *Bangert*, 131 Wis. 2d 278–79 (citation omitted). The more comprehensive a plea colloquy, the more likely the plea is knowing, voluntary and intelligent and the more difficult it will be for defendants to withdraw their pleas. *State v. Jenkins*, 2007 WI 96, ¶ 60, 303 Wis. 2d 157, 736 N.W.2d 24. Here, the plea colloquy, which incorporated the plea questionnaire, establishes that Hoppe did not make a prima facie case under *Bangert*. Nonetheless, Hoppe had an evidentiary hearing, at which the State showed clearly and convincingly that his plea was knowingly, voluntarily and intelligently entered. Hoppe's disappointment in his sentence is not sufficient grounds for withdrawal of his pleas. *See State v. Booth*, 142 Wis. 2d 232, 237, 418 N.W.2d 20 (Ct. App. 1987).

*By the Court.*—Judgment and order affirmed.