STATE of Wisconsin, Plaintiff-Respondent,

v.

Christopher S. HOPPE,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2007AP905–CR. Oral argument March 3, 2009.
—Decided May 29, 2009.*

2009 WI 41

(Also reported in 765 N.W.2d 794.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Martha K. Askins,* assistant state public defender, with whom on the briefs was *Steven D. Grunder,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Eileen W. Pray,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

An amicus curiae brief was filed by *Michele M. LaVigne* and *Keith A. Findley,* on behalf of the Frank J. Remington Center, University of Wisconsin Law School, and oral argument by *Michele M. LaVinge.*

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. The defendant, Christopher S. Hoppe, seeks review of a published decision of the court of appeals affirming a judgment convicting the defendant of 12 counts of possessing child pornography contrary to Wis. Stat. § 948.12(1m) and an order denying the defendant's motion to withdraw his guilty plea.[1] Judge Robert J. Kennedy of the

---

[1] *State v. Hoppe,* 2008 WI App 89, 312 Wis. 2d 765, 754 N.W.2d 203.

Circuit Court for Walworth County entered the judgment of conviction; Judge John R. Race of the Circuit Court for Walworth County entered the order denying the defendant's motion to withdraw the plea of guilty.[2]

¶ 2. The defendant moved to withdraw his guilty plea on the ground that defects in the plea colloquy as well as factors extrinsic to the plea colloquy prevented him from entering his plea knowingly, intelligently, and voluntarily. After conducting an evidentiary hearing, the circuit court denied the defendant's post-conviction motion to withdraw his guilty plea.

¶ 3. The defendant's motion to withdraw his guilty plea effectively functions as a dual-purpose motion: a "*Bangert* motion" and a "*Nelson/Bentley* motion."[3] The motion may be viewed as a *Bangert* motion

---

[2] The judgment of conviction states that the defendant's offenses occurred on or around October 25, 2002. On that date, Wis. Stat. § 948.12(1m) provided in relevant part as follows:

> Whoever possesses any undeveloped film, photographic negative, photograph, motion picture, videotape, or other recording of a child engaged in sexually explicit conduct under all of the following circumstances is guilty of a Class E felony:
>
> (a) The person knows that he or she possesses the material.
>
> (b) The person knows the character and content of the sexually explicit conduct in the material.
>
> (c) The person knows or reasonably should know that the child engaged in sexually explicit conduct has not attained the age of 18 years.

[3] *See State v. Howell,* 2007 WI 75, ¶¶ 73–74, 301 Wis. 2d 350, 734 N.W.2d 48 (discussing dual-purpose *Bangert* and *Nelson/Bentley* motions); *State v. Brown,* 2006 WI 100, ¶ 42, 293 Wis. 2d 594, 716 N.W.2d 906 (same).

A "*Bangert* motion" invokes the line of cases including *State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986). A "*Nelson/Bentley* motion" invokes the line of cases including

insofar as it is based on defects in the plea colloquy and as a *Nelson/Bentley* motion insofar as it is based on factors extrinsic to the plea colloquy.[4] The parties, the circuit court, and the court of appeals have properly treated the motion as two separate motions. We do the same.

¶ 4.  Two issues are presented for our review with respect to the defendant's *Bangert* motion:

I.  Is the plea colloquy deficient on its face so that the defendant was entitled to an evidentiary hearing on the basis of his *Bangert* motion? In other words, did the defendant's *Bangert* motion to withdraw the guilty plea make a prima facie showing of "a violation of Wis. Stat. § 971.08(1) or other court-mandated duties by pointing to passages or gaps in the plea hearing transcript?[5]

II.  Is the defendant entitled to withdraw his guilty plea on the basis of his *Bangert* motion because the State failed to meet its burden of proving at the evidentiary hearing that the defendant entered a knowing, intelligent, and voluntary plea notwithstanding defects in the plea colloquy?

*Nelson v. State,* 54 Wis. 2d 489, 195 N.W.2d 629 (1972), and *State v. Bentley,* 201 Wis. 2d 303, 548 N.W.2d 50 (1996).

[4] *See Howell,* 301 Wis. 2d 350, ¶ 74 ("The *Bangert* and *Nelson/Bentley* motions . . . are applicable to different factual circumstances. A defendant invokes *Bangert* when the plea colloquy is defective; a defendant invokes *Nelson/Bentley* when the defendant alleges that some factor extrinsic to the plea colloquy, like ineffective assistance of counsel or coercion, renders a plea infirm.").

[5] *Brown,* 293 Wis. 2d 594, ¶ 39 (citing *Bangert,* 131 Wis. 2d at 274). A *Bangert* motion must also allege that the defendant did not know or understand the information that should have been provided at the plea hearing. No one disputes that the defendant's motion meets the second requirement imposed upon *Bangert* motions.

¶ 5.   A third issue is presented for review with respect to the defendant's *Nelson/Bentley* motion:

III.   Is the defendant entitled to withdraw his guilty plea on the basis of his *Nelson/Bentley* motion because the defendant carried his burden at the evidentiary hearing of proving on the basis of factors extrinsic to the plea colloquy that the defendant did not enter a knowing, intelligent and voluntary plea?

¶ 6.   The court of appeals answered all three questions in the negative and affirmed the order of the circuit court denying the defendant's motion to withdraw the guilty plea.

¶ 7.   We conclude as follows:

I.   The plea colloquy is deficient on its face, and the defendant was entitled to an evidentiary hearing on the basis of his *Bangert* motion. The defendant's *Bangert* motion to withdraw the guilty plea makes a prima facie showing "of a violation of Wis. Stat. § 971.08(1) or other court-mandated duties" at the plea hearing.[6]

II.   The defendant is not entitled to withdraw his guilty plea on the basis of his *Bangert* motion. The State met its burden at the evidentiary hearing of proving that the defendant entered a knowing, intelligent, and voluntary plea notwithstanding defects in the plea colloquy.

III.   The defendant is not entitled to withdraw his guilty plea on the basis of his *Nelson/Bentley* motion. The defendant failed to carry his burden at the evidentiary hearing of proving on the basis of factors extrinsic to the plea colloquy that the defendant did not enter a knowing, intelligent, and voluntary plea.

¶ 8.   Accordingly, we affirm the decision of the court of appeals, although on different grounds.

---

[6] *Brown,* 293 Wis. 2d 594, ¶ 39 (citing *Bangert,* 131 Wis. 2d at 274).

¶ 9.   We briefly summarize the facts relevant to the defendant's motions for plea withdrawal and provide additional facts later in the opinion discussing the plea colloquy.

¶ 10.   In a third amended information filed in July 2004, the State charged the defendant with two counts of first-degree sexual assault of a child contrary to Wis. Stat. § 948.02(1), one count of intentional physical abuse of a child contrary to Wis. Stat. § 948.03(2)(b), 66 counts of possessing child pornography contrary to Wis. Stat. § 948.12(1m), and one count of bail jumping contrary to Wis. Stat. § 946.49(1)(b).

¶ 11.   The State and the defendant agreed that the defendant would plead guilty to 12 of the 66 counts of possessing child pornography; that all remaining charges, with the possible exception of the bail jumping charge,[7] would be dismissed and read in for sentencing purposes; that the parties would request a presentence investigation; and that each side would be free to argue for any sentence at the sentencing hearing. The circuit court accepted this plea agreement.

¶ 12.   The defendant was represented by two attorneys. The defendant's lead counsel was an out-of-state attorney whom the circuit court permitted to appear in the matter pro hac vice. The second attorney, whom we refer to as "local counsel" in this opinion, is a Wisconsin attorney.

¶ 13.   The circuit court held a sentencing hearing approximately three months later. The defendant was sentenced to a total of 12 years' initial confinement, 18 years' extended supervision, and 17 years' probation, all to be served consecutively.

---

[7] The circuit court record is not clear about what became of the bail jumping charge.

¶ 14. The defendant moved to withdraw his guilty plea. The circuit court conducted an evidentiary hearing, at which the defendant and his local trial counsel each testified. After receiving supplemental briefs from the parties, the circuit court then denied the defendant's motion to withdraw his guilty plea.

¶ 15. The court of appeals affirmed the circuit court partly on the ground that the plea colloquy was adequate under *Bangert* and partly on the ground that the evidence introduced at the evidentiary hearing, along with the circuit court's factual findings, demonstrates that the defendant is not entitled to withdraw his guilty plea.[8]

## I

¶ 16. We address the first issue on review, namely whether the defendant's *Bangert* motion to withdraw the guilty plea makes a prima facie showing "of a violation of Wis. Stat. § 971.08(1) or other court-mandated duties by pointing to passages or gaps in the plea hearing transcript."[9]

¶ 17. This court determines the sufficiency of the plea colloquy and the necessity of an evidentiary hearing, questions of law, independently of the circuit court and court of appeals but benefiting from their analyses.[10]

¶ 18. This court recently summarized the mandatory duties, including the duties under Wis. Stat.

---

[8] *See Hoppe,* 312 Wis. 2d 765, ¶¶ 9–34.

[9] *Brown,* 293 Wis. 2d 594, ¶ 39 (citing *Bangert,* 131 Wis. 2d at 274).

[10] *See Brown,* 293 Wis. 2d 594, ¶ 21.

§ 971.08(1),[11] that a circuit court must discharge during a plea hearing. In *State v. Brown,* 2006 WI 100, 293 Wis. 2d 594, 716 N.W.2d 906, we stated:

> During the course of a plea hearing, the [circuit] court must address the defendant personally and:
>
> (1) Determine the extent of the defendant's education and general comprehension so as to assess the defendant's capacity to understand the issues at the hearing;

---

[11] Wisconsin Stat. § 971.08 (2007–08) provides in relevant part as follows:

> (1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:
>
> (a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.
>
> (b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.
>
> (c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."
>
> (d) Inquire of the district attorney whether he or she has complied with s. 971.095(2).
>
> (2) If a court fails to advise a defendant as required by sub. (1) (c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. This subsection does not limit the ability to withdraw a plea of guilty or no contest on any other grounds. . . .

At the time of the plea hearing, this statute was identical to its current form.

(2) Ascertain whether any promises, agreements, or threats were made in connection with the defendant's anticipated plea, his appearance at the hearing, or any decision to forgo an attorney;

(3) Alert the defendant to the possibility that an attorney may discover defenses or mitigating circumstances that would not be apparent to a layman such as the defendant;

(4) Ensure the defendant understands that if he is indigent and cannot afford an attorney, an attorney will be provided at no expense to him;

(5) Establish the defendant's understanding of the nature of the crime with which he is charged and the range of punishments to which he is subjecting himself by entering a plea;

(6) Ascertain personally whether a factual basis exists to support the plea;

(7) Inform the defendant of the constitutional rights he waives by entering a plea and verify that the defendant understands he is giving up these rights;

(8) Establish personally that the defendant understands that the court is not bound by the terms of any plea agreement, including recommendations from the district attorney, in every case where there has been a plea agreement;

(9) Notify the defendant of the direct consequences of his plea; and

(10) Advise the defendant that "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense [or offenses] with which you are charged may result in deportation, the exclusion from admission to this country or the

denial of naturalization, under federal law," as provided in Wis. Stat. § 971.08(1)(c).[12]

¶ 19. The defendant's *Bangert* motion targets four of the mandatory duties outlined in *Brown* and alleges that the defendant did not know or understand the information that should have been provided at the plea hearing. *Bangert,* 131 Wis. 2d at 274.

¶ 20. First, the defendant's motion states that "[t]he court failed to ascertain that [the defendant] had not been threatened or promised anything when he entered his pleas." The motion further alleges that "[i]n fact, [the defendant] had been promised a sentence no greater than two years of imprisonment[.]" The motion also alleges that "[the defendant] believed that he had to waive his right to a trial because [his lead counsel] was completely unprepared for trial." The motion appears to present lead counsel's alleged lack of preparation as a threat (namely the threat of poor representation at trial) compelling the defendant's decision to enter a plea.

¶ 21. Second, the defendant's motion alleges that the circuit court failed to establish the defendant's understanding of the range of punishments to which the defendant subjected himself by entering a plea. The motion states that "[t]he court failed to inform [the defendant] of the maximum penalties for his crimes" and failed to inform the defendant that "the sentences could be imposed consecutively or concurrently[.]" It further alleges that "[the defendant] did not . . . know the maximum penalties" and "was not aware that the sentences imposed could be concurrent or consecutive."

¶ 22. Third, the defendant's motion states that the circuit court "did not inform [the defendant] of the

---

[12] *Brown,* 293 Wis. 2d 594, ¶ 35 (footnotes omitted).

constitutional rights being waived by entry of his guilty pleas" and that "[i]n fact, [the defendant] did not understand the rights being waived by pleading guilty[.]" In particular, the motion alleges that although the defendant knew that he had the right to remain silent, he did not know that his silence could not be used against him at trial; that the defendant did not know that he had the right to a jury trial where all 12 jurors (as opposed to a majority of the jurors) would need to agree as to the defendant's guilt; and that the defendant erroneously believed that he was not waiving his right to confront the witnesses against him by virtue of pleading guilty.

¶ 23. Fourth, the defendant's motion states that the circuit court failed to notify the defendant of a direct consequence of his plea, namely that "[the circuit court] could consider the offenses that were dismissed and read-in when deciding on what sentence to impose." The motion also alleges that "[the defendant] was not otherwise aware of this information[.]"

¶ 24. We therefore turn to the plea colloquy to gauge whether the plea colloquy satisfies the duties mandated by Wis. Stat. § 971.08(1) or the court. At the plea hearing the circuit court was presented with the defendant's completed and signed "Plea Questionnaire/ Waiver of Rights" Form, using the standard court Form adopted by the Judicial Conference pursuant to Wis. Stat. § 758.18.[13] Local counsel supplied most of the

___

[13] Wisconsin Stat. § 758.18(1) (2007–08) provides in relevant part that "[t]he judicial conference shall adopt standard court forms for use by parties and court officials in all civil and criminal actions and proceedings in the circuit court as provided in ss. 807.001 (1) and 971.025 (1)."

Wisconsin Stat. § 807.001(1) (2007–08) provides in relevant part that "[i]n all civil actions and proceedings in circuit court,

writing required by the Form, although some of the writing, including the defendant's signature, belongs to the defendant. The Plea Questionnaire/ Waiver of Rights Form indisputably states that the defendant understands the mandatory information to which the defendant's motion is addressed.[14]

the parties and court officials shall use the standard court forms adopted by the judicial conference under s. 758.18 (1), commencing the date on which the forms are adopted."

Wisconsin Stat. § 971.025 (2007–08) provides in relevant part as follows:

> (1) In all criminal actions and proceedings and actions and proceedings under chapters 48 and 938 in circuit court, the parties and court officials shall use the standard court forms adopted by the judicial conference under s. 758.18(1), commencing the date on which the forms are adopted. . . .
>
> (2) A party or court official may supplement a court form with additional material. . . .

[14] In relevant part, the Plea Questionnaire/Waiver of Rights Form contains the following statements:

> (1) "I [the defendant] have not been threatened or forced to enter this plea. No promises have been made to me [the defendant] other than those contained in the plea agreement."
>
> (2) "The maximum penalty I [the defendant] face upon conviction is: EACH COUNT CONSECUTIVE: 5 YEARS PRISON AND A $10,000.00 FINE (60y 120,000 TOTAL)[.]"
>
> (3) "I [the defendant] understand that by entering this plea, I give up the following constitutional rights: . . . I give up my right to remain silent and I understand that my silence could not be used against me at trial. . . . I give up my right to a jury trial, where all 12 jurors would have to agree that I am either guilty or not guilty. I give up my right to confront in the court the people who testify against me and cross-examine them. . . ."
>
> (4) "I [the defendant] understand that if any charges are read-in as part of a plea agreement they have the following effects: . . . although the judge may consider read-in charges when imposing sentence, the maximum penalty will not be increased. . . ."

¶ 25. In addition to examining the completed Plea Questionnaire/Waiver of Rights Form, the circuit court addressed the defendant personally, as well as the defendant's two attorneys, about the Plea Questionnaire/ Waiver of Rights Form. This colloquy, set forth below, constitutes the entire relevant plea colloquy:

> THE COURT: [H]ave you gone over this plea ques-
> tionnaire and waiver of rights form with your attorneys
> — and by the way, which one did you go over it with,
> [local counsel] or [lead counsel]?
>
> THE DEFENDANT: Both, sir.
>
> THE COURT: Both, excellent. Are you satisfied you
> understand everything in the questionnaire and waiver
> of rights [form] and the elements of the charges you're
> going to be pleading to, a copy of which elements are
> attached hereto?
>
> THE DEFENDANT: Yes, sir, I am.
>
> THE COURT: In your opinion, are you going to be —
> first I guess, do you understand everything else in the
> questionnaire and waiver of rights form?
>
> THE DEFENDANT: I understand it fully, sir.
>
> THE COURT: Fully. In your opinion are you going to
> be freely, knowingly, and voluntarily entering your
> pleas pursuant to the agreement with all your rights in
> mind?
>
> THE DEFENDANT: Yes, sir, I am.
>
> THE COURT: Counsels, [local counsel] first and then
> [lead counsel], are you both so satisfied? [Local coun-
> sel]?
>
> [Local counsel]: Yes, sir.

THE COURT: [Lead counsel]?

[Lead counsel]: Yes, your honor.

THE COURT: Based on that, I find that it will be a free, knowing and voluntary plea, or set of pleas. I'm now going to turn to, bear with me, Counts 4 through 15 [all relating to possessing of child pornography], of the third amended information.

And what I'm going to do is read those jointly with some slight variation. In other words, they're all the same charges except that they involve different images.

. . . .

You have the third amended information in front of you and you can see what I'm referring to as those entries?

THE DEFENDANT: Yes, sir, I see it.

THE COURT: Very well. Then, continuing on, all of those charges are contrary to [Section 948.12(1m)(a)], Wisconsin Statutes. How do you plead to all of those counts, 4 through 15 . . . ?

THE DEFENDANT: I plead guilty, sir.

THE COURT: Counsels, do you . . . both agree, along with your client, that there is a factual basis? Meaning not necessarily that he agrees that . . . the facts are as claimed, but that if a jury accepted these facts, they could, based upon that, find the defendant guilty. Do both attorneys and the defendant agree that there is a factual basis in that light?

[Local counsel]: Correct.

[Lead counsel]: Yes, your honor.

THE COURT: Very well. Based upon that, I find a factual basis. I adjudge the defendant guilty. Counts 1

176

through 3 and 16 through 19 . . . are all dismissed and read in for purposes of sentencing.

I'll order a presentence investigation. The parties will be free to argue. We'll set that up at this time.

. . . .

[Local counsel]:   I'm sorry, judge, that was . . . through Count 69, correct?

THE COURT:   [Counts] 16 through 69 [all relating to possession of child pornography] are dismissed and read in, plus 1 through 3 [the two counts of first-degree sexual assault of a child and the single count of intentional physical abuse of a child].

[Local counsel]:   Okay.

. . . .

THE COURT:   All right. Now I'm going to cover one thing that I don't think has to be covered, but I'm doing it as an excess of caution.

There is no real plea agreement other than this dismissal, and that's, nothing you can do about it. The parties are free to argue. So this language really doesn't mean a whole lot. But do you understand that the judge is not bound by any plea agreement or recommendations and may impose the maximum penalty; do you understand that?

THE DEFENDANT:   Yes, sir, I do.

THE COURT:   And you . . . talked that over with your attorneys, as well as the rest?

THE DEFENDANT:   Yes, I have.

. . . .

THE COURT:   All right. Then I am . . . all set to proceed to set a sentencing date.

177

¶ 26. As is evident in the colloquy, the circuit court specifically invoked the Plea Questionnaire/ Waiver of Rights Form, ascertained that the defendant's counsel had helped the defendant to review the Form, and further ascertained that the defendant generally understood the Form's contents. In effect the circuit court in the present case did little more than incorporate the Plea Questionnaire/Waiver of Rights Form into the plea colloquy. Aside from noting the existence of the Plea Questionnaire/Waiver of Rights Form, the circuit court did little else to provide to the defendant, or to elicit from him, the information required during the plea colloquy.

¶ 27. To conclude that the circuit court complied with its plea colloquy duties the court of appeals looked outside the transcript of the plea hearing to the completed Plea Questionnaire/Waiver of Rights Form referenced at the plea colloquy hearing. Considering the Plea Questionnaire/Waiver of Rights Form as an integral part of the plea colloquy, the court of appeals concluded that the defendant had failed to make a prima facie showing that the plea colloquy was defective.

¶ 28. The court of appeals concluded that "the contents of the plea questionnaire [are] an intrinsic part of [the plea] colloquy" because the circuit court "specifically invoked the plea questionnaire [that the defendant] had completed" and then "ascertained that [the defendant] had gone over the questionnaire with both [his] attorneys" and "that [the defendant] understood everything in the questionnaire[.]"[15] In essence, the court of appeals treated all the statements in the Plea Questionnaire/Waiver of Rights Form as if those

---

[15] *Hoppe,* 312 Wis. 2d 765, ¶¶ 14, 17.

statements had been uttered by the circuit court judge or the defendant on the record during the plea hearing.

■

¶ 29. The issue before this court is whether a circuit court's reference to a completed Plea Questionnaire/Waiver of Rights Form complies with the requirements of Wis. Stat. § 971.08(1) or other court-mandated duties.

¶ 30. A circuit court may use the completed Plea Questionnaire/Waiver of Rights Form when discharging its plea colloquy duties. "A circuit court has significant discretion in how it conducts a plea hearing" and may, "[w]ithin its discretion, . . . incorporate into the plea colloquy the information contained in the plea questionnaire, relying substantially on that questionnaire to establish the defendant's understanding[.]"[16] Indeed, we stated in *Bangert* that one way for the circuit court to inform the defendant of the constitutional rights that he is waiving and to verify the defendant's understanding that he is waiving these rights is for the circuit court to "specifically refer to some portion of the record or communication between defense counsel and [the] defendant which affirmatively exhibits [the] defendant's knowledge of the constitutional rights he will be waiving" and then to "ascertain whether the defendant understands he will be waiving certain constitutional rights by virtue of his guilty or no contest plea[.]"[17]

¶ 31. A circuit court may not, however, rely entirely on the Plea Questionnaire/Waiver of Rights Form as a substitute for a substantive in-court plea colloquy. Although a circuit court may refer to and use a Plea

[16] *State v. Brandt,* 226 Wis. 2d 610, 621, 594 N.W.2d 759 (1999).

[17] *Bangert,* 131 Wis. 2d at 271–72.

Questionnaire/Waiver of Rights Form at the plea hearing, the plea hearing transcript must demonstrate that the circuit court used a substantive colloquy to satisfy each of the duties listed in *Brown*. The point of the substantive in-court plea colloquy is to ensure that the defendant's guilty plea comports with the constitutional requirements for a knowing, intelligent, and voluntary plea.

¶ 32. The Plea Questionnaire/Waiver of Rights Form provides a defendant and counsel the opportunity to review together a written statement of the information a defendant should know before entering a guilty plea. A completed Form can therefore be a very useful instrument to help ensure a knowing, intelligent, and voluntary plea. The plea colloquy cannot, however, be reduced to determining whether the defendant has read and filled out the Form. Although we do not require a circuit court to follow inflexible guidelines when conducting a plea hearing,[18] the Form cannot substitute for a personal, in-court, on-the-record plea colloquy between the circuit court and a defendant.

¶ 33. We conclude that in the present case the circuit court incorporated the Plea Questionnaire/Waiver of Rights Form into the plea colloquy and that the circuit court's reliance on the Form was so great that the Plea Questionnaire/Waiver of Rights Form substituted for an in-court colloquy. We do not agree with the court of appeals or the State that the circuit court in the present case fulfilled the mandatory requirements.

---

[18] *See, e.g., Bangert,* 131 Wis. 2d at 267 (stating that "we have not established inflexible guidelines which a trial court must follow in ascertaining a defendant's understanding of the nature of the charge").

¶ 34.   At least with respect to the first two allegations in the defendant's *Bangert* motion, we therefore agree with the defendant that his motion does make a prima facie showing of a violation of Wis. Stat. § 971.08(1) or other court-mandated duties by pointing to passages or gaps in the plea hearing transcript. As the defendant asserts, the plea hearing transcript shows that neither the circuit court nor the defendant made any statements during the plea hearing relating to promises or threats made in connection with the defendant's plea or any statements relating to the range of punishments to which the defendant subjected himself by entering his plea. The plea hearing transcript is completely silent on these matters.

¶ 35.   Our view of the plea colloquy in the present case comports with *State v. Hansen,* 168 Wis. 2d 749, 485 N.W.2d 74 (Ct. App. 1992).

¶ 36.   In *Hansen,* the circuit court conducted a colloquy with Hansen that proceeded in relevant part as follows:

> THE COURT:   Mr. Hansen, did you go over this questionnaire and waiver of rights form with your attorney?
>
> [HANSEN]:   Yes, I did.
>
> THE COURT:   Did you sign it?
>
> [HANSEN]:   Yes.
>
> THE COURT:   Did you understand it when you signed it?
>
> [HANSEN]:   Yes, I did.[19]

¶ 37.   Hansen contended that the circuit court had failed to verify Hansen's understanding that he was

---

[19] *State v. Hansen,* 168 Wis. 2d 749, 752, 485 N.W.2d 74 (Ct. App. 1992).

waiving constitutional rights by entering his plea. The court of appeals agreed. The *Hansen* court of appeals concluded that the plea colloquy was defective because it "establishe[d] only that Hansen had read and understood the [Plea Questionnaire/Waiver of Rights] form" and "[did] not establish that Hansen understood that by entering his no contest plea he was waiving his applicable constitutional rights."[20] The *Hansen* court of appeals concluded that "such limited personal colloquy is not the *substantive* kind of personal exchange between the trial court and the defendant" that is required under Wisconsin law.[21]

¶ 38. The *Hansen* decision is incompatible with the position taken by the court of appeals in the instant case that when the circuit court ascertains during the plea hearing that the defendant generally understands the contents of the Plea Questionnaire/Waiver of Rights Form, the Form's contents thereby become an intrinsic part of the plea colloquy and may substitute for an in-court personal colloquy between the circuit court and the defendant. *Hansen* demonstrates that it is not enough for the circuit court to ascertain that a defendant generally understands the contents of the Plea Questionnaire/Waiver of Rights Form.

¶ 39. The court of appeals relied primarily upon *State v. Moederndorfer,* 141 Wis. 2d 823, 416 N.W.2d 627 (Ct. App. 1987), in support of its conclusion that when the circuit court ascertains during the plea hearing that the defendant generally understands the Plea Questionnaire/Waiver of Rights Form, the Form's contents are intrinsic to the plea colloquy. *Moederndorfer,* however, does not support the position adopted by the

[20] *Id.* at 756.
[21] *Id.* at 755.

court of appeals. *Moederndorfer* illustrates the need for a more substantive colloquy than provided in the instant case.

¶ 40. In the *Moederndorfer* case, Moederndorfer argued that the circuit court had erred in failing during the plea hearing to "read each of the constitutional rights contained on the [Plea Questionnaire/Waiver of Rights] form to confirm [Moederndorfer's] understanding."[22] In order to inform Moederndorfer of the constitutional rights he was waiving and to verify Moederndorfer's understanding that he was waiving these rights, the circuit court had informed Moederndorfer that he would give up the constitutional rights listed in the Plea Questionnaire/Waiver of Rights Form by virtue of pleading guilty and then had ascertained that Moederndorfer understood the Form's contents. Before establishing that Moederndorfer understood the Form, the circuit court had stated: "By entering that plea of guilty, Mr. Moederndorfer, you give up rights, and these rights have been detailed in this three-page waiver of rights form."[23] The circuit court had not specifically enumerated each constitutional right that Moederndorfer was giving up.

¶ 41. The court of appeals rejected Moederndorfer's attack on the plea colloquy. It relied upon the language in *Bangert* stating that in order to inform the defendant of the constitutional rights that he is waiving and to verify the defendant's understanding that he is waiving these rights, the circuit court may "specifically refer to some portion of the record or communication between defense counsel and [the] de-

---

[22] *State v. Moederndorfer,* 141 Wis. 2d 823, 826, 416 N.W.2d 627 (Ct. App. 1987).

[23] *Id.* at 828–29 n.1.

fendant which affirmatively exhibits [the] defendant's knowledge of the constitutional rights he will be waiving" and then "ascertain whether the defendant understands he will be waiving certain constitutional rights by virtue of his guilty of no contest plea[.]"[24] The court of appeals concluded that the circuit court had followed this procedure in its colloquy with Moederndorfer.

¶ 42. *Moederndorfer* does not support the position that so long as the circuit court ascertains that the defendant generally understands the Plea Questionnaire/Waiver of Rights Form, the contents of that Form may be viewed as intrinsic to the plea colloquy. The circuit court in *Moederndorfer* used substantive colloquy during the plea hearing to establish Moederndorfer's understanding of the information that Moederndorfer claimed on appeal not to understand. As the court of appeals explained in *Hansen,* the *Moederndorfer* decision is properly interpreted to mean that although use of the Plea Questionnaire/Waiver of Rights Form "lessen[s] the extent and degree of the colloquy otherwise required between the trial court and the defendant," the Form is "not intended to eliminate the need for the court to make a record demonstrating the defendant's understanding" of the particular information contained therein.[25]

¶ 43. We therefore conclude that the defendant was entitled to an evidentiary hearing on the basis of his *Bangert* motion and turn to the evidentiary hearing.

[24] *Id.* at 827 (quoting *Bangert,* 131 Wis. 2d at 271–72) (emphasis omitted).

[25] *Hansen,* 168 Wis. 2d at 756 (interpreting *Moederndorfer*).

II

■■■

¶ 44.   Once the defendant files a *Bangert* motion entitling him to an evidentiary hearing, the burden shifts to the State to prove by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary despite the identified defects in the plea colloquy.[26] If the State carries its burden of proof that the guilty plea was knowing, intelligent, and voluntary, the plea remains valid. Otherwise, the defendant may withdraw the guilty plea. "When a guilty plea is not knowing, intelligent, and voluntary, a defendant is entitled to withdraw the plea as a matter of right because such a plea 'violates fundamental due process.' "[27]

¶ 45.   We must now determine whether the State met its burden of showing that the defendant's guilty plea was entered knowingly, intelligently, and voluntarily.[28] In making this determination, we accept the circuit court's findings of historical and evidentiary fact unless they are clearly erroneous.[29] We independently

---

[26] *See Brown,* 293 Wis. 2d 594, ¶ 40 ("If the [*Bangert*] motion establishes a prima facie violation of Wis. Stat. § 971.08 or other court-mandated duties and makes the requisite allegations, the court must hold a postconviction evidentiary hearing at which the state is given an opportunity to show by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary despite the identified inadequacy of the plea colloquy." (footnote omitted)).

[27] *Brown,* 293 Wis. 2d 594, ¶ 19 (quoting *State v. Van Camp,* 213 Wis. 2d 131, 139, 569 N.W.2d 577 (1997)).

[28] *Id.,* ¶ 19.

[29] *Id.*

determine whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary.[30]

¶ 46.  For purposes of this part of the opinion, we assume without deciding that all four plea colloquy defects that the defendant identifies in his *Bangert* motion do exist. We therefore assume without deciding that it was the State's burden to prove that the defendant did not enter his plea in response to threats or promises outside the plea agreement; that the defendant understood the range of punishments to which he subjected himself by entering a plea; that the defendant was informed of his constitutional rights and understood that he would be waiving those rights by entering a plea; and that the defendant was informed that the circuit court could consider dismissed but read-in charges for purposes of sentencing.

¶ 47.  The State may "rely on the totality of the evidence, much of which will be found outside the plea hearing record."[31] The State, for example, "may present the testimony of the defendant and defense counsel to establish the defendant's understanding."[32] "The state may also utilize the plea questionnaire and waiver of rights form, documentary evidence, recorded statements, and transcripts of prior hearings to satisfy its burden."[33]

¶ 48.  In the present case, it is not completely clear whether the circuit court intended its evidentiary hearing to cover the issues raised in the defendant's *Bangert* motion. Early in the hearing, the circuit court appeared

---

[30] *Id.*

[31] *Id.*, ¶ 40 (quotation marks and citation omitted).

[32] *Id.* (citation omitted).

[33] *Id.*

to limit the hearing's scope to issues relating to the defendant's *Nelson/Bentley* motion.[34] Much of the evidence presented at the evidentiary hearing, however, clearly pertains to the defendant's *Bangert* motion. Indeed, at the end of the evidentiary hearing, appellate defense counsel acknowledged confusion about the scope of the proceeding.[35] The circuit court also requested supplemental briefs from the parties without stating whether those briefs should be limited to issues relating to the defendant's *Nelson/Bentley* motion. The defendant filed a brief that almost exclusively supported his *Bangert* motion.

¶ 49. The circuit court's written decision does not fully clarify the scope of the evidentiary hearing. The decision states that the circuit court's inquiry is guided by the *Bangert* line of cases and makes no reference to the *Nelson/Bentley* line of cases. The decision does not, however, explicitly decide any of the issues relevant to a *Bangert* motion. It does not state whether the

---

[34] The transcript of the evidentiary hearing reveals the following exchange between the circuit court and appellate defense counsel:

THE COURT: ... I believe that you failed to make your prima facie case. You may proceed.

[Defense counsel]: In that regard then, Judge, the way I will proceed is not pursuant to Bangert but pursuant to the Nelson and Bentley standard where I'll put my client on the stand. I will bear the burden of proof if Your Honor has as I think you have just stated that I have not established a prima facie case.

THE COURT: Please proceed. Whatever you wish, of course.

[35] Appellate defense counsel stated that "the hearing that we've had ... could be viewed as either a Bangert hearing or as I think has been referred to a Bentley hearing on whether or not there is a reason that [the defendant] should be permitted to withdraw his plea ...."

187

defendant's *Bangert* motion met the conditions necessary to trigger the defendant's right to an evidentiary hearing. It also seems to assign the burden of proof at the evidentiary hearing to the defendant, whereas in a *Bangert*-style evidentiary hearing it is the State's burden to prove by clear and convincing evidence that the defendant's plea was entered knowingly, intelligently, and voluntarily despite the identified defects in the plea colloquy.

¶ 50. Despite these irregularities in the evidentiary hearing, we conclude that under the circumstances of the present case we need not remand the matter to the circuit court for further evidentiary proceedings under *Bangert* in order to determine whether the State carried its burden of proof at the evidentiary hearing. The circuit court record permits only one result in this case. The transcript of the evidentiary hearing is replete with evidence relating to the defendant's *Bangert* motion. The circuit court considered this evidence and made findings of historical or evidentiary fact that this court accepts; they are not clearly erroneous. The evidence in the record and the circuit court's findings are sufficient for this court to determine as a matter of law that the State proved by clear and convincing evidence that the defendant's guilty plea was entered knowingly, intelligently, and voluntarily despite the defects in the plea colloquy.

¶ 51. The defendant appeared as a witness at the evidentiary hearing. The defendant testified in relevant part that although he signed the Plea Questionnaire/ Waiver of Rights Form, he was unaware of the Form's contents and did not recall whether local counsel had read the Form to him; that his trial counsel erroneously told him that he would receive no more than two years' imprisonment; that he did not recall whether either of

his trial attorneys told him that he faced a potential penalty much more severe than two years' imprisonment; that he would not have entered his plea if he had known the actual maximum penalty that he was facing; that he mistakenly believed at the time of the plea hearing that if he went to trial he would be convicted if a majority of the jurors concluded that he was guilty; that he mistakenly believed that if he went to trial, the prosecutor could call the defendant as a witness and could use the defendant's silence against him; that he mistakenly believed that if he entered a plea, he would still have an opportunity to confront the witnesses against him at the sentencing hearing; that he did not understand what it meant that many of his charges would be dismissed and read-in for sentencing purposes; that he entered his plea because local counsel told him that lead counsel was not adequately prepared to go to trial; that neither of his trial attorneys asked him whether he was on medication on the day he entered his plea; and that he was in fact on pain medication, which prevented him from understanding what was happening during the plea hearing and during his meeting with counsel prior to the hearing.

¶ 52. The defendant's local trial counsel also testified about his interactions with the defendant around the time the defendant entered his plea. Local counsel's testimony was on many points inconsistent with the defendant's testimony. Local counsel testified that he went over the form with the defendant before the defendant entered his plea; that he explained to the defendant the maximum penalty that he was facing; that no one promised the defendant that he would be sentenced for only two years, although lead counsel may have stated that the defendant could hope to receive a sentence of that length; that he read the

defendant the section of the Form relating to waiver of constitutional rights; that he read to the defendant the part of the Form stating that the defendant had the right to remain silent, that his silence could not be used against him, and that he was waiving his right to remain silent by pleading guilty; that he explained the right to remain silent in layman's terms to the defendant; that he read the part of the Form stating that the defendant had the right to be tried by a jury of 12 persons, all of whom would need to agree that he was guilty in order to produce a conviction; that he also read the part of the Form stating that the defendant had the right to confront the witnesses against him and that the defendant was giving up this right by pleading guilty; that he explained the meaning of read-in charges to the defendant; that although he was not confident that lead counsel was adequately prepared for a trial, he believed that lead counsel met the minimum standards for competence and professionalism; that although he knew that the defendant had been taking medication in the recent past, he asked the defendant whether he had taken any medication in the last 24 hours and the defendant said that he had not; that the defendant appeared to understand everything that was said to him and did nothing to suggest that his understanding was impaired in any way; that he gave the defendant an opportunity to ask questions if he was confused about anything; and finally that he had communicated with the defendant between the plea hearing and the sentencing hearing, during which time the defendant never suggested that he was confused about what had happened at the plea hearing.

¶ 53.   During the evidentiary hearing, the circuit court also examined documentary evidence in the record.

190

¶ 54. Finally, the circuit court considered evidence of the defendant's general characteristics. At the time of the plea hearing the defendant was 45 years old, had 15½ years of formal schooling, and had worked as a non-commissioned officer for the United States Marine Corps. Local counsel supplied uncontroverted testimony that the defendant possesses above-average intelligence.

¶ 55. In its written decision, the circuit court made findings of historical or evidentiary fact relevant to the defendant's *Bangert* motion. The upshot of the circuit court's findings was that the circuit court disbelieved the defendant's claims that he did not receive and did not understand the information that was provided in the Plea Questionnaire/Waiver of Rights Form but that was not provided to the defendant during the plea colloquy. The circuit court found that "[i]t is clear the defendant was informed and understood his rights," that the defendant "was aware of the maximum penalties," and that "[t]he defendant's taking of painkillers clearly had no effect on his understanding[.]" The circuit court explicitly adopted the State's position that "[the defendant's] testimony demonstrates that he is an intelligent man who is both eloquent and manipulative" and that, as a general matter, "[the defendant's] claims simply are not credible."

¶ 56. The circuit court's findings of historical fact are not clearly erroneous. They are supported by evidence in the circuit court record, including the Plea Questionnaire/Waiver of Rights Form signed by the defendant, as well as by the testimony of local trial counsel.

¶ 57. In light of the circuit court's findings of historical fact and the evidence supporting them, we conclude as a matter of law that the State carried its

burden at the evidentiary hearing of proving by clear and convincing evidence that the defendant entered his plea knowingly, intelligently, and voluntarily despite identified defects in the plea colloquy.

¶ 58. For the reasons set forth, we conclude that the defendant is not entitled to withdraw his plea on the basis of his *Bangert* motion.

## III

¶ 59. The final issue presented for our review is whether the defendant is entitled to withdraw his plea on the basis of his *Nelson/Bentley* motion. We treat the defendant's motion as a *Nelson/Bentley* motion insofar as the motion alleges that the defendant's failure to understand certain information resulted from problems extrinsic to the plea colloquy.[36] The defendant's

---

[36] A *Nelson/Bentley* motion entitles the defendant to an evidentiary hearing if (1) the motion "allege[s] sufficient, non-conclusory facts . . . that, if true, would entitle [the defendant] to relief"; and (2) the circuit court record as a whole does not conclusively demonstrate that the defendant is entitled to no relief. *See Howell*, 301 Wis. 2d 350, ¶¶ 76–77. "[I]f the defendant fails to allege sufficient facts in his motion to raise a question of fact, or presents only conclusionary allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing." *Howell*, 301 Wis. 2d 350, ¶ 75 (quoting *Nelson*, 54 Wis. 2d at 497–98).

The circuit court in the present case conducted an evidentiary hearing related to the defendant's *Nelson/Bentley* motion. Because the defendant got an evidentiary hearing, we need not, and do not, determine the need for the circuit court to grant the defendant an evidentiary hearing. We decide only whether the defendant is entitled to withdraw his guilty plea.

192

*Nelson/Bentley* motion overlaps substantially with his *Bangert* motion. Each motion raises in the present case the same ultimate issue of constitutional fact: whether the defendant's guilty plea was entered knowingly, intelligently, and voluntarily.

■■

¶ 60. The defendant is entitled to withdraw his guilty plea if the circuit court's refusal to allow withdrawal of the plea would result in a manifest injustice.[37] The burden at a *Nelson/Bentley* evidentiary hearing is on the defendant.[38] The defendant must prove by clear and convincing evidence that withdrawal of the guilty plea is necessary to avoid a manifest injustice.[39] A defendant may demonstrate a manifest injustice by showing that his guilty plea was not made knowingly, intelligently, and voluntarily.[40]

¶ 61. As we stated above, whether a plea was entered knowingly, intelligently, and voluntarily is a question of constitutional fact.[41] We accept the circuit court's findings of historical and evidentiary fact unless they are clearly erroneous.[42] We independently determine whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary.[43]

---

[37] *State v. Straszkowski,* 2008 WI 65, ¶ 28, 310 Wis. 2d 259, 750 N.W.2d 835 (citing *State v. Thomas,* 2000 WI 13, ¶ 16, 232 Wis. 2d 714, 605 N.W.2d 836).

[38] *Brown,* 293 Wis. 2d 594, ¶ 42.

[39] *Bentley,* 201 Wis. 2d at 311.

[40] *Straszkowski,* 310 Wis. 2d 259, ¶ 28 (citing *Brown,* 293 Wis. 2d 594, ¶ 18).

[41] *Brown,* 293 Wis. 2d 594, ¶ 19.

[42] *Id.*

[43] *Id.*

¶ 62. The *Nelson/Bentley* motion, like the *Bangert* motion, depends largely upon the claim that the defendant did not understand the maximum penalties that he was facing, the constitutional rights that he was waiving, or the meaning of the agreement to read in dismissed charges. The defendant's motion alleges that the defendant's comprehension was generally impaired by pain medication and that the defendant's attorneys mistakenly communicated to him that he was facing no more than two years' imprisonment.

¶ 63. We also view the motion as a *Nelson/Bentley* motion insofar as it alleges that the defendant felt compelled to enter a plea because lead trial counsel was unprepared to defend him at trial. Lead counsel's alleged lack of preparation is also a problem extrinsic to the plea colloquy.[44]

¶ 64. The circuit court's findings relating to the defendant's *Bangert* motion are applicable to the *Nelson/Bentley* motion as well. The circuit court specifically found that "[t]he defendant's taking of painkillers clearly had no effect on his understanding," that the defendant "was aware of the maximum penalties" that he was facing, and that "[i]t is clear the defendant was informed and understood his rights[.]" Although the circuit court did not make any specific finding relating to whether the defendant felt compelled to enter a plea because lead trial counsel was unprepared to defend him at trial, the circuit court found as a general matter that "[the defendant's] claims simply are not credible."

---

[44] We note that although the motion disparages lead trial counsel, it does not allege that the defendant was denied the effective assistance of counsel. "[T]he manifest injustice test is met if the defendant was denied the effective assistance of counsel." *Bentley*, 201 Wis. 2d at 311 (quotation marks & quoted source omitted).

The circuit court clearly did not accept the defendant's testimony about his motivation in entering the guilty plea.

¶ 65.  The circuit court's findings of historical and evidentiary fact are supported by evidence in the record and are not clearly erroneous. Based upon the circuit court's findings and the evidence supporting them, we further determine as a matter of law that the defendant failed to prove by clear and convincing evidence that withdrawal of his plea is necessary to avoid a manifest injustice.

¶ 66.  For the reasons set forth, we conclude that the defendant is not entitled to withdraw his plea on the basis of his *Nelson/Bentley* motion.

* * * *

¶ 67.  We conclude that the defendant was entitled to an evidentiary hearing on the basis of his *Bangert* motion and that the defendant is not entitled to withdraw his guilty plea on the basis of his *Bangert* motion or on the basis of his *Nelson/Bentley* motion.

¶ 68.  Accordingly, we affirm the decision of the court of appeals, although on different grounds, affirming the circuit court's judgment and order.

*By the Court.*—The decision of the Court of Appeals is affirmed.