# COURT OF APPEALS
## DECISION
## DATED AND FILED

## October 1, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2018AP2326-CR**

Cir. Ct. No.  2017CF632

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ORLANDO C. DAVIS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  JEFFREY A. KREMERS and MARY M. KUHNMUENCH, Judges.  *Affirmed.*

¶1     DUGAN, J.[1]   Orlando C. Davis appeals the judgment of conviction, entered on his guilty pleas to the following three misdemeanors:  (1) intimidation of a victim, as an act of domestic abuse, as a repeater; (2) knowingly violating a domestic abuse order-injunction, as an act of domestic abuse, as a repeater; and (3) criminal trespass to a dwelling, as an act of domestic abuse, as a repeater.  He also appeals the denial of his postconviction motion for an order allowing him to withdraw his guilty pleas.[2]

¶2     In his motion, Davis alleged that during the plea colloquy the trial court failed to explain the elements of the offenses that he was pleading guilty to, and it did not determine if Davis had read the relevant jury instructions or if trial counsel had read them to him.  Davis argued that he did not understand the elements of those offenses when he entered his guilty pleas and, therefore, his pleas were not knowing, intelligent, or voluntary.  As stated, the motion was denied.

¶3     On appeal, Davis argues that the postconviction court erred as a matter of law because it held that the trial court's plea colloquy complied with Wisconsin law and because it assigned him the burden of proving that his guilty pleas were not knowing, intelligent, and voluntary.  We affirm the judgment and order.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] The Honorable Jeffrey A. Kremers presided over the case through sentencing.  The Honorable Mary M. Kuhnmuench presided over the postconviction proceedings.  We refer to Judge Kremers as the trial court and Judge Kuhnmuench as the postconviction court.

**BACKGROUND**

¶4      On February 6, 2016, at approximately 2:00 a.m., in violation of a domestic abuse injunction, Davis went to the Milwaukee County residence of G.L. and forcibly entered her home.  On February 8, 2016, the State charged Davis with (1) felony intimidation of a victim, as an act of domestic abuse, as a repeater; (2) knowingly violating a domestic abuse injunction, as an act of domestic abuse, as a repeater; (3) criminal trespass, as an act of domestic abuse, as a repeater; (4) criminal damage to property (less than $2500), as an act of domestic abuse, as a repeater; and (5) disorderly conduct, as an act of domestic abuse, as a repeater. The sole felony charge was the intimidation of a victim offense.

¶5      At the subsequent preliminary hearing, trial counsel moved to dismiss the felony intimidation of a victim charge asserting that the State had not shown that any force was used against the victim.  The court commissioner denied the motion relying on a police officer's testimony that (1) Davis had pulled G.L. out of a closet when she was making the 911 telephone call to report the incident, and (2) when police knocked on the door to G.L.'s home, Davis held G.L. back to prevent her from answering the door.

¶6      A jury trial was scheduled for July 19, 2017.  Prior to trial, the parties attempted to reach a plea agreement but the prosecution rejected Davis's request for reduction of the victim intimidation charge from a felony to a misdemeanor.

¶7      When the trial court was about to convene the trial, the prosecutor stated that the parties had reached a plea agreement.  The prosecutor outlined the agreement, which included reducing the victim intimidation charge from a felony to a misdemeanor; Davis pleading guilty to that charge and to the charges of

knowingly violating a domestic abuse injunction and criminal trespass. The two other misdemeanor charges were dismissed, but read in for the purposes of sentencing.

¶8    The trial court then engaged Davis in a colloquy that included explaining the misdemeanor victim intimidation charge and the maximum possible penalty for that charge. The trial court asked Davis whether he understood that charge and the maximum possible penalty. Davis replied, "Yes, Your Honor." Davis then pled guilty to the charge.

¶9    The trial court next explained the charge of violating a domestic abuse injunction, as an act of domestic abuse, as a repeater, and stated the maximum possible penalty for that charge. The trial court then asked Davis whether he understood that charge and its maximum possible penalty. Davis replied, "Yes, Your Honor." Davis then also pled guilty to that charge.

¶10    The trial court then explained the charge of criminal trespass, as an act of domestic abuse, as a repeater, and stated the maximum possible penalty for that charge. It then asked Davis whether he understood that charge and its maximum possible penalty. Davis answered, "Yes, Your Honor." Davis then also pled guilty to that charge.

¶11    The trial court also asked Davis whether his signature was on the plea questionnaire and waiver of rights form and whether he had reviewed the form with trial counsel. Davis responded, "Yes, Your Honor."

¶12    The trial court next asked Davis whether he talked to trial counsel "about what the elements of each charge are and the evidence the [S]tate would have to prove [for] each of those elements[.]" Davis said, "Yes." The trial court

also asked Davis if he had read the portion of the complaint stating the factual basis for the charges and whether it was accurate. Davis indicated that it was accurate.

¶13    In addition, the trial court asked trial counsel if he was satisfied that Davis was "entering his pleas freely, voluntarily, intelligently with full understanding of the nature of the charges, maximum possible penalties and all the rights he's giving up by pleading guilty[.]" Trial counsel responded that he was satisfied that Davis understood those matters. The trial court then accepted Davis's guilty pleas.

¶14    The trial court next began the sentencing portion of the hearing. The prosecutor requested a global sentence of three years of initial confinement followed by three years of extended supervision.[3] Trial counsel requested a lengthy period of probation, with an imposed and stayed sentence; or, alternatively, no more than eighteen months of initial confinement, followed by an unspecified term of extended supervision. The trial court imposed a global sentence of three years of initial confinement followed by three years of extended supervision. Judgment was entered.

¶15    Davis filed a postconviction motion seeking an order allowing him to withdraw his guilty pleas. He alleged that the trial court failed in its mandatory duty to advise him of the elements of each offense to which he pled guilty or to make sure he was knowledgeable about the elements as stated in the jury instructions. Davis would also testify that he did not understand those elements.

---

[3] The prosecutor requested three consecutive sentences of one year in prison and one year of extended supervision on each count.

¶16 The postconviction court conducted an evidentiary hearing and both Davis and trial counsel testified. The postconviction court then issued a lengthy and detailed oral decision denying the motion. A written order was subsequently entered. This appeal follows.

## DISCUSSION

¶17 Davis argues that the postconviction court erred as a matter of law when it held that the trial court's plea colloquy complied with Wisconsin law. He also argues that the postconviction court erred as a matter of law because it assigned Davis the burden of proof on his claim that his guilty pleas were not knowing, intelligent, and voluntary.

### I. Applicable law and standards of review

¶18 *State v. Bangert* summarizes a trial court's duties at a plea hearing, which are designed to ensure that a defendant's guilty or no-contest plea is knowing, intelligent, and voluntary. *See id.*, 131 Wis. 2d 246, 271-75, 389 N.W.2d 12 (1986).[4] WISCONSIN STAT. § 971.08(1)(a) requires the trial court to "determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted." Nonetheless, *Bangert* does not require that the trial court conduct a plea colloquy in a ritualized or formulaic way; to the contrary, a trial court has considerable flexibility to conduct a plea colloquy in a manner that best suits the circumstances. *See State v. Hoppe*, 2009 WI 41, ¶¶30, 32, n.18, 317 Wis. 2d 161, 765 N.W.2d 794.

---

[4] If the trial court fails at one of the duties, it is called a *Bangert* violation and a motion raising the alleged error is called a *Bangert* motion. *State v. Cross*, 2010 WI 70, ¶19, 326 Wis. 2d 492, 786 N.W.2d 64.

¶19    Under Wisconsin case law,

> [o]nce the defendant files a ***Bangert*** motion entitling him to an evidentiary hearing, the burden shifts to the State to prove by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary despite the identified defects in the plea colloquy. If the State carries its burden of proof that the guilty plea was knowing, intelligent, and voluntary, the plea remains valid. Otherwise, the defendant may withdraw the guilty plea.

***Hoppe***, 317 Wis. 2d 161, ¶44 (footnote and paragraph structure omitted). The State may "rely on the totality of the evidence, much of which will be found outside the plea hearing record." ***Id.***, ¶47 (citation omitted).

¶20    When considering whether the State met its burden of showing that the defendant's guilty pleas were entered knowingly, intelligently, and voluntarily, we accept the postconviction court's findings of fact unless they are clearly erroneous, *see **id.***, ¶45, and do not disturb its credibility determinations, *see **State v. Turner***, 114 Wis. 2d 544, 550, 339 N.W.2d 134 (Ct. App. 1983). However, we independently determine whether such facts establish that the defendant's pleas were knowing, intelligent, and voluntary. *See **Hoppe***, 317 Wis. 2d 161, ¶45.

## II.    Davis's pleas were knowing, intelligent, and voluntary

¶21    Davis argues that the postconviction court erred as a matter of law when it ruled that the plea colloquy satisfied the ***Bangert*** requirements. He also argues that the postconviction court erred in concluding that Davis's pleas were knowing, intelligent, and voluntary. We disagree. The crux of Davis's ***Bangert*** challenge is that the trial court breached its statutory obligation to ensure that he understood the elements of the offenses to which he pled guilty.

7

¶22    Davis signed a plea questionnaire and waiver of rights form stating, "I understand that the crime(s) to which I am pleading has/have elements that the State would have to prove beyond a reasonable doubt if I had a trial. These elements have been explained to me by my attorney or as follows[.]" The form also states, "I have reviewed and understand this entire document and any attachments. I have reviewed it with my attorney."

¶23    Davis's *Bangert* hearing testimony about whether he had been advised about the elements of the offenses prior to the plea hearing conflicted with trial counsel's hearing testimony. Davis testified that he signed the plea questionnaire and waiver of rights form because he thought that was "what [he] was supposed to do." However, he "didn't fully understand everything" and he "just signed off on it."

¶24    Davis stated that he did not know what an element of an offense was until postconviction counsel explained it to him. He also testified that he previously pled guilty to charges against him in three other cases, which included a felony, without ever knowing what an element was. Further, Davis testified that he has an undergraduate degree in business management.

¶25    Davis did not recall trial counsel telling him about the elements of the charged offenses. Nor did he recall trial counsel discussing with him the jury instruction for criminal trespass to dwellings and for violating a temporary restraining order, even though those instructions were filed with the plea questionnaire and waiver of rights form.

¶26    He further testified when he pled guilty he did not know, with respect to the violation of a domestic injunction charge, that if he went to trial the State would have to prove beyond a reasonable doubt that he knew that he was

violating an injunction. He also stated that at that time he also did not know, with respect to the criminal trespass to a dwelling charge, that if he went to trial the State would be required to prove that the trespass was under circumstances tending to cause a breach of the peace.

¶27 By contrast, trial counsel testified that prior to the plea hearing, he reviewed the complaint with Davis, he discussed the elements of all the charges against Davis with him, and that he had discussed the elements of the offenses with Davis multiple times during the case. Trial counsel also testified that, after the prosecution offered to amend the victim intimidation charge from a felony to a misdemeanor on the morning of the trial, he completed the plea questionnaire and waiver of rights form with Davis, he reviewed the entire form and addendum with Davis, and Davis signed the form in his presence. Trial counsel also discussed the jury instructions for the three offenses to which Davis was pleading guilty.

¶28 Based on his conversations with Davis, trial counsel believed that Davis had an understanding of the nature of the charges and the elements of the offenses. Trial counsel also testified that if he had any reason to believe that Davis did not understand anything related to the plea process, he would have asked the trial court for more time or proceeded differently.

¶29 Trial counsel also specifically recalled that, prior to Davis's pleas, he talked to Davis about whether he had been served with the domestic abuse injunction and what the State would have to show to prove that he violated a domestic abuse injunction because, based on his earlier discussions with Davis, it appeared that Davis had not been served and trial counsel was considering filing a motion to dismiss that charge. However, it was later established that Davis had been served.

¶30    Trial counsel also stated that he makes a practice of filing the applicable jury instructions when he files the plea questionnaire and waiver of rights form because he knows from his appellate criminal work that issues frequently arise regarding whether a defendant understood the elements of the crime.  He also wants to be certain the defendants he represents understand the factual basis for their pleas and the elements of the offenses.  Trial counsel explained that he did not file the intimidation of a victim jury instruction in Davis's case, because he only had the felony version with him, not the misdemeanor version.  So, he reviewed the felony intimidation of a victim instruction with Davis and specifically told him that the fourth element did not apply to the misdemeanor level charge.

¶31    In its decision, the postconviction court explained that it found trial counsel's testimony that he went over the jury instructions for the three offenses to which Davis plead guilty credible.  It concluded that trial counsel's testimony established that, prior to the plea colloquy, trial counsel had fully informed Davis of the nature and the elements of the charges.  The postconviction court found trial counsel's testimony about reviewing the applicable jury instructions with Davis before Davis pled guilty was "far more credible" than that of Davis on the same issue.  The postconviction court compared trial counsel's "very deliberate and careful" explanation about reviewing the jury instructions with Davis to Davis's conclusory, uncorroborated denials, and it found trial counsel's testimony to be more credible than Davis's testimony.  The postconviction court had the opportunity to hear Davis and trial counsel testify and to observe their demeanor in the courtroom.  We will not disturb the postconviction court's credibility determination.  *See Fidelity & Deposit Co. v. First Nat'l Bank*, 98 Wis. 2d 474, 485, 297 N.W.2d 46 (Ct. App. 1980) (stating that "[w]here the trial court is the

10

finder of fact and there is conflicting evidence, the trial court is the ultimate arbiter of the credibility of witnesses").

¶32     Based on the postconviction court's findings of fact, we conclude that the trial court clearly and properly relied upon trial counsel's testimony that, prior to the plea hearing, he reviewed the elements of the relevant offenses with Davis and that Davis understood the elements of the offenses to which he was pleading guilty.  Therefore, we conclude that the trial court did not breach its statutory duty to make certain that Davis understood the elements of each offense to which he was pleading guilty.  Furthermore, to the extent any breach of that duty could be found, we conclude that the State met its burden of showing that Davis's plea was knowing, intelligent, and voluntary.[5]

## CONCLUSION

¶33     For the reasons stated, we conclude that Davis's guilty pleas were knowing, intelligent, and voluntary.  Therefore, we affirm the judgment and order.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)(4).

---

[5] Davis argues that the postconviction court erred as a matter of law because it allocated the burden of proof to him.  However, we have independently determined that the State met its burden of proof.  *See Hoppe*, 317 Wis. 2d 161, ¶44.  Therefore, we need not address the issue. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (stating that appeals should be decided on the narrowest possible grounds).

11